IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

THERESA ELIZABETH TODD,

        Plaintiff,

v.                                                   CIVIL ACTION NO. 3:09-0303

MARSHA C. WOLFE TODD,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff's motion to remand (Doc. 5). For the reasons explained below, the motion is **DENIED**.

**Background**

Plaintiff is the former wife of Bernard Lee Todd. The couple divorced on the 25th of February 1997, through an order entered by the Superior Court of Richmond County, Georgia. The divorce order references a separation agreement, which ordered that Bernard Todd pay permanent alimony on a monthly basis until Elizabeth Todd either dies or remarries. The separation agreement further states,

> "The husband [Bernard Lee Todd] for as long as he is obligated to pay alimony is to maintain a life insurance policy or policies on his life with the aggregate of the benefits to be paid on his death to be no less than $30,000.00 with the wife designated as the irrevocable beneficiary or, at his option, will have a wife designated as irrevocable beneficiary on his pension plan for $30,000.00.

Bernard died on November 29, 2007. Pl.'s Compl. at 2. Theresa is alive and has remained single since her divorce from Bernard.

Plaintiff has alleged that Marsha Wolfe Todd, Bernard's second wife and widow, received proceeds from a life insurance policy on Bernard or is receiving benefits from Bernard's pension as the surviving spouse. Plaintiff claims that she and not Marsha is entitled to the first $30,000 from these policies and requests the Court place a constructive trust on benefits from any life insurance policy insuring Bernard Lee Todd or survivor benefits from his pension fund up to $30,000. Plaintiff filed suit in the Circuit Court of Putnam County West Virginia on February 19, 2009, in an effort to recover these benefits. Defendant filed and served her Notice of Removal on March 25, 2009, alleging that ERISA preempts all allegations.

Although Plaintiff acknowledges that the plans from which she seeks benefits are covered by ERISA, she argues that ERISA does not preempt her particular type of claim. She argues that because she does not seek to alter the terms or administration of the plan, but only place a constructive trust on benefits already paid, that ERISA is inapplicable. Defendant argues that only a Qualified Domestic Relations Order (QDRO) can alienate benefits from an ERISA plan, and that consequently a court will have to determine whether Plaintiff's separation agreement is a QDRO –an analysis governed by ERISA.

**Standard of Review**

Section 1441 of Title 28 of the United States Code provides, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." "The burden of demonstrating jurisdiction resides with 'the party seeking removal.'" *Maryland Stadium Authority, v. Ellerbe*

*Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). Removal jurisdiction should be strictly construed "because of the significant federalism concerns implicated." *Id.* (internal citations omitted).

**Analysis**

Removal jurisdiction in this case is premised on ERISA preemption of Plaintiff's state law claims. Pursuant to the terms of the act and subject to limited exceptions, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The Fourth Circuit Court of Appeals has found that because ERISA provides a mechanism for a domestic relations order to affect interests in plan benefits, ERISA will preempt a state law claim seeking to enforce an interest in ERISA benefits when that interest is created through a domestic relations order. *Metropolitan Life Ins. Co. v. Pettit*, 164 F.3d 857 (4th Cir. 1998) ("*Pettit*"). The facts of *Pettit* are similar to those in this case, and the precedent controls.

*Pettit* was initiated by MetLife Insurance company after a decedent's former spouse (Betty Pettit) and widow (Patricia Pettit) both made claims against his life insurance policy. *Id.* at 859. Patricia was the named beneficiary of the life insurance policy, but Betty claimed a right to proceeds from the policy pursuant to a property settlement agreement entered into at the time of her divorce from the decedent. *Id.* at 859-60. This agreement required decedent to maintain $200,0000 of life insurance benefits in favor of Betty. *Id.* In an attempt to enforce the property settlement agreement Betty presented a claim to MetLife. *Id.* After the suit was initiated, Betty filed a cross-claim against Patricia to place a constructive trust on any benefits Patricia received from the policy. *Id.* The district court granted Patricia's motion for summary judgment on the cross-claim finding "that Betty had not employed a qualified domestic relations order (QDRO), the method ERISA provided for a divorced spouse to enforce property rights in an ERISA plan." *Id.* at 859. Betty appealed claiming

that because her constructive trust claim was based on state law and did not conflict with ERISA policies it was not preempted. *Id.*

On appeal the Fourth Circuit applied two different preemption tests and found that under either, ERISA would preempt the state law claims seeking a constructive trust. The first test under an ERISA specific standard articulated by the United States Supreme Court: "under that unique language of § 144(a), a state law relates to an employee benefit plan it if has a connection with, or reference to such a plan." *Id.* at 861-62 (citing *Shaw v. Delta Air Lines, Inc.* 463 U.S. 85, 96-97 (1983). Applying this standard the *Pettit* court held,

> Using the *Shaw* standard, it is obvious that a constructive trust claim against a plan beneficiary, which arises from a domestic relations agreement and directly affects the distribution of plan benefits, has a connection with an ERISA plan. Congress made as much clear, for ERISA itself addresses interests that may arise in plans pursuant to a domestic relations action.

*Id.* at 862 (citing 29 U.S.C. § 1056(d)). Moving to a more traditional conflict preemption test, the *Pettit* court found that using a domestic relations order to affect plan benefits through state law mechanisms (such as a constructive trust) would hinder the goals Congress had in mind when it enacted ERISA. *Id.* at 863-64 ("Not only is a claim under a property settlement agreement an alternate enforcement mechanism that impacts the traditional parties, it is also exactly the situation that Congress sought to avoid when it enacted ERISA.")

Here, as in *Pettit*, the plaintiff is a former spouse attempting to enforce an interest in life insurance proceeds (and possibly pension benefits) which arise from a plan covered by ERISA. The

mechanism of attempted enforcement is the same – the use of a constructive trust on any proceeds received by the named plan beneficiary. Here as, in *Pettit,* it is federal law which must apply.[1] ERISA preempts Plaintiff's state law claims; the Court properly holds removal jurisdiction to decide a question of federal law. *See* 28 U.S.C. § 1331.

**Conclusion**

For the reasons explained above, Plaintiff's state law claims are preempted by ERISA. The case is properly in federal court; Plaintiff's Motion to Remand (Doc. 5) is **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

        ENTER: May 21, 2009

        ROBERT C. CHAMBERS
        UNITED STATES DISTRICT JUDGE

---

[1] Although the issue as stated by the *Pettit* court was "whether ERISA preempts the enforcement of a property settlement agreement against life insurance benefits paid through an ERISA-governed plan," there was no analysis by the appellate court of whether the agreement met the requirements of a QDRO. *Pettit*, 164 F.3d at 860. ERISA specifically exempts QDRO's from preemption. 29 U.S.C. § 1056(d). *Pettit* would not then apply, and a federal court might not have jurisdiction, if a domestic relations order were clearly established as a QDRO prior to the initiation of a federal lawsuit. At least one circuit court of appeal, however, has determined that the initial question of whether a domestic relations order is a QDRO is question for the federal courts. *Rouse v. DaimlerChrysler Corp. UAW*, 300 F.3d 711, 716 (6th Cir. 2002) ("The question before the district court was whether the [domestic relations order] satisfied § 1056 of ERISA. That question is strictly federal."); *See also, Metropolitan Life Ins. Co. v. Bigelow*, 283 F.3d 436 (2d Cir. 2002)*; and Metropolitan Life Ins. Co. v. Marsh* 119 F.3d 415 (6th Cir. 1997) (Where federal courts exercised jurisdiction to decide whether a domestic relations order was a QDRO.).